Our next case is Townsend v. Keniston. All right, Mr. Abbott, whenever you are ready. Thank you and good morning. May it please the court. My name is Dan Abbott. I'm the attorney here for City of Boca Raton Police Officer Adam Keniston. Officer Keniston's motion for summary judgment based upon qualified immunity was denied by the district court magistrate by applying a standard for qualified immunity that came from a district court decision in 2014 and 11th Circuit precedent decades older than that that required that the facts and circumstances within Officer Keniston's knowledge were sufficient to warrant a prudent man to believe Mr. Townsend committed aggravated assault with a deadly weapon. Do you think it matters whether he pointed the gun at the officer or not? Whether he in fact did? No, Your Honor, I don't. Um, do you think that let's let's take let's take your client's belief about what happened out of this, right? Do you think that there are other other reason and let me back up. Let's say that your client didn't even think that he pointed the gun at him, right? Let's say that your client saw him holding the gun. The gun was not concealed. So he saw that he had a gun and was otherwise behaving in a threatening way. Do you think that that would be enough in this situation for your client to have qualified immunity? I do, Your Honor. Under the circumstances of this case, I think that would constitute a simple assault under Florida law. That's not what Townsend was arrested for. He was he was arrested for aggravated assault, correct? Yes, Your Honor. Exactly. And under Florida, do we not have to have the right to right now open carry? You do have a right. Yes, Your Honor. But you don't. Do you not have a right to protect your property under Florida law? Not like this, Your Honor. No, no. Do you? If the question is under aggravated assault, do you not have to show some kind of reckless behavior or intentional behavior? Or aggravated assault? Yes, Your Honor. Which is what he was charged with, correct? It is what he was charged with. And is it not undisputed? There is a dispute in the record. The Mr. Townsend says that he did not point the gun at the officer, correct? And the officer says that he did point the gun at him. That's true. Is that not a disputed fact then? Should that not go to a jury? No, Your Honor. Not under qualified immunity standards. Under the standard for qualified immunity, the test is whether a reasonable officer could conclude that... Okay, well what reasonable officer would arrest an individual after investigating that that's the resident, that he says, I thought someone was burglarizing my car, and there was a 911 call made by the wife. What reasonable officer would have arrested that individual? A reasonable police officer who thought that a gun was pointed at him, even from Mr. Townsend's  perspective. And when he made a call into dispatch, correct, did he tell dispatch that there was an individual pointing a gun at him? No, he did not, correct? When the police officer called... When he called for dispatch, did he say that there was an individual pointing a gun at him? He said that he needed backup... Did he say there was an individual pointing a gun at him, yes or no? He did not say that the individual was pointing a gun at him, but remember, Your Honor, Officer Keniston is calling for backup, right? The purpose for calling for backup is not to recite the facts... When Mr. Townsend realized, when the officer identified himself as an officer, because prior to that, Mr. Townsend did not know that he was an officer, correct? That's what he says, and I don't doubt it. Well I think we've all seen the video, so I don't think any of us at 3 in the morning would think it was anything other than a burglar, since there was burglaries in that area, regardless. Is it not true that once Mr. Townsend realized that he was an officer, he complied in full? Because that's what the video shows. Yes, that's true. Speaking only for myself, I will say that I think that if it depends on whether Mr. Townsend pointed the gun or not, then I'm not sure that there's enough evidence one way or the other. If your argument is that even if he didn't point the gun, there's enough, then for my part that might be closer, but I also find myself wondering if you've argued that to preserve it. Well, first of all, Your Honor, the test is an objective one. So the issue in terms of the aggravated assault is whether a reasonable person in the officer's situation could conclude that there was a substantial chance of criminal activity. He may have made a mistake, and still there might have been probable cause to arrest Townsend for aggravated assault. What was the aggravated behavior? I don't know if this is what Judge Lagoa is getting at, but I don't understand, you've got someone, I saw the video too, and you've got your client with a flashlight not clearly identified in the dark, in black, looking in cars, in a neighborhood where people have been complaining of carjacking. So again, we're in Florida, people are armed. He comes out of his home, disheveled maybe, but there's no evidence that he was intoxicated, which is also what the dispatch communication says incorrectly. What was the danger? What was the assault? What was the physical altercation that the officer thought was about to happen, given this totality of the circumstances? Pointing a gun at somebody, Your Honor. But then we say we don't know if he was pointing the gun. So that is a jury question, but you want summary judgment in favor of your client, and we don't even know that. No, Your Honor. I am not asking this court to conclude that Townsend, in fact, pointed the gun. That is not the test. The test is whether the police officer could have concluded. What is the aggravated assault? He got charged and arrested for aggravated assault. And by the way, this is not our first rodeo, okay? So we have, I mean, I've seen many cases where an individual, okay, and it was a mistake on both sides, but then the individual who is detained then acts in a manner that is inconsistent with civil behavior. And they either resist, they become belligerent. So all of these things would give an officer then probable cause to detain someone for obstruction, resisting an officer. But Mr. Townsend did none of that. He cooperated in full. So again, what is the aggravated assault? The perception that an assault occurred. In terms of the aggravated assault. You can hold a gun, you can come out of your house in Florida, because we have the right in Florida to have a gun to protect our property. So you can come out openly, in fact, as you know, because the first DCA found the requirements of open carry, the ban on open carry unconstitutional. So you can do that now in full. And before that, you could have a gun and you could come out of your house to protect your property with your gun. So exactly, what did he do? Him coming out, because when you see him in the video, he comes out, there isn't any evidence. He says he didn't point the gun at him. So other than pointing the gun, what is the aggravated assault charge? The perception for the aggravated assault, which again, isn't the test, because any reasonable perception that a crime may have occurred justifies qualified immunity. Well what other crime, what other crime would there be? What other felony would there be? Simple assault, Your Honor, as argued to the court below. The issue here is certainly not. What would be the simple assault? Approaching somebody, walking down the street, yelling at them, gesturing, holding a gun because somebody shined a flashlight in your car and left. That is not, respectfully, Your Honor, our right to firearms does not allow one, even if Kenniston was not a police officer, to allow someone that shined a light in your car to follow them down the street. I will recite from the 4th DCA, which is actually where Boca Raton is, correct? That's actually the DCA that is in the location of Boca, correct? It is. Judge Artow. Florida provides a statutory right to openly carry a weapon or firearm on one's home property or place of business. It is not unlawful in Florida to briefly and openly display a lawfully carried firearm to the ordinary sight of another person so long as the firearm is not being intentionally displayed. That's true. Townsend was not on his property. He came out of his house, correct? All of us in public came out of our house. He was not at. He came out of his house and he went to the street because he was calling the individual who he thought was burglarizing his car. Wasn't he pursuing that individual? He was chasing a man down the street who shined a flashlight into his car. In a neighborhood that had been already the victim of a lot of carjacking. Yes, that's why the police officer was there. And his wife called the police officer. His wife called the cops too. Again, maybe you've answered it and I've missed it. I just don't, I don't see the aggravated assault. I didn't hear the simple assault. I didn't see the physical altercation. And then you talk about a perception. You're right. You don't have to prove that the gun right now was being pointed, but you do have to give us enough to support the, the perception. And I haven't heard that either. All right. The, the perception is following a person down the middle of the street at three o'clock in the morning, half naked with a gun in your hand and calling out and gesturing at them and yelling, Hey, Hey, Hey, a reasonable officer who doesn't know where Townsend came from. Doesn't know that Townsend is the owner of a car. Just knows that he's being followed by a half naked man calling out. Right. But then you arrest him after you determine you arrest him after you determine that in fact he is the resident of that house and that his wife called nine one. The arrest was done after all of that was determined, correct? Crime. Yes or no? Of course. Yes. Yes. The crime was completed at that point. And in fact, the investigation crime was completed because he said specifically there was, I thought there was somebody burglarizing my car. As I understand it, the officers were concerned about vigilante justice in that if someone breaks into your car, you cannot personally chase them down the street with a gun down the block and harm them. Am I correct that even though there's open carry in Florida, that that does not give people license to chase people around their neighborhood with a gun? That's absolutely right. Judge, you can you can show your gun to to defend yourself against imminent violence. Thank you. Thank you very much, Your Honor. I'll reserve the rest of my time. Mr. Rodriguez. Good morning. May it please the court. My name is Valentin Rodriguez. I represent Mr. Townsend, who is present in the audience today for this oral argument. And first of all, I'd like the court to understand the questions you asked are very important because these were the same questions that I presented in the summary. I just can't. Aggravated assault is a crime of intent in Florida, correct? Yes, Your Honor. It is an assault. Simple assault is a misdemeanor. It's not a felony. He was charged with a felony. He was charged with a felony, Your Honor. You know, the problem is if he had if if there was and I'm not asking you to concede that this happened, right? I'm just asking about the legal question. If there was arguable probable cause to arrest your client for a simple assault, does qualified immunity would qualified immunity follow from that? No, it would not, Your Honor. Why not? Because of the arrest was actually for an aggravated assault. But more importantly, Your Honor asked a very good question. You mentioned maybe chasing the person down the street that the facts are disputed here, but there's evidence that he never left beyond his house one house over. He walked out onto the street and he was encountered in front of the house next to his. The officer said in a statement it was 500 feet away, but then the officer conceded during his deposition, which is a part of the record, that it wasn't that far away. It was simply out on the street. How far away was it? It was one house. It was he was at the next property over approximately 100 feet, maybe 80 feet. They're pretty big lots, maybe 80 feet. We have the picture and we showed the officer where it was, and it wasn't more than half of a house away, if that makes sense. The officer was way down at the end of the street and came driving toward him and confronted him there. There's a video that you could see where he's talking to him. That is the house next to his. We had the officer confirm that. It wasn't like he went down and chased the guy down the street five or six blocks or five or six houses. He literally came out there inquiring. The important fact here, Your Honor, is immediately upon the encounter, he explained to Officer Kennison exactly what his perception was. He said, yes, sir, I'm so sorry. I did not know you were a police officer. You looked exactly like a burglar. There's no disputed fact that he was wearing all black with nothing that could ... When you look on the video, you can't really tell. He's in an unmarked police vehicle. Completely unmarked. Unmarked police vehicle. Not only that, if you looked at the video, the vehicle stops in front of the house for a moment. Then you see that vehicle go down further and stop. No blue lights on, nothing to indicate it's a police officer's vehicle other than it's just black, unmarked vehicle with no tag. The perception is you have a black vehicle in the neighborhood and you have an officer who's completely in disguise approaching a car, shining a flashlight in it, which is also another interesting aspect to it because that is usually what a burglar does, is shine a flashlight to see if there's items in the car that they can steal and then they'll break into it. Well, all of that supports why they called the police and let the police take care of it, but your client comes out of his home, half-dressed, with a gun, sees someone he doesn't know is a police officer, and then starts shouting orders at him with his gun. Why is it unreasonable for the person in this case who also happens to be a police officer to feel endangered? Because the officer admitted that he did not actually see a gun. First of all, he saw an object in his hand. He never could identify it as a firearm. The disputed fact is Mr. Townsend testified that he was standing there with a gun at his side, with his hand up, saying, hey, he wasn't saying anything other than hey, hey, hey, hoping the police were going to arrive so that this person that's there stays and the police will deal with it. Oh, he was doing a citizen's arrest type of... No, I don't think he was doing any type of arrest. I think he was just trying to get the person's attention to stop so that hopefully the 911 call went through and they would be there. This wasn't a... But it wasn't the person... The person was off of his property at that point, right? Yes, he saw him walking off of his... He saw him as he's walking off of his property. Actually, he was on the property in front of the house, then shined a light in there, then came in and shined a light in his house. And yes, he was definitely off. In fact, he was in a vehicle down the street at this point. By the time Mr. Townsend gets out to the house in front of him, there's a vehicle facing away, unmarked vehicle. And ultimately, the testimony was that vehicle turns around and comes up to Mr. Townsend, puts their blue lights on. Immediately, Mr. Townsend puts his hands in the air because the cop... The officer at this point identifies himself as a police officer by the blue lights and the microphone telling him to put his hands down. And then seconds later, complete cooperation at the scene. But didn't the officer said, some to the effect of, you should have called the police instead of pointing a gun at a law enforcement officer, right? And then, it's a little bit hard to make out, but as I listened to the video, it sounded like he said, yes, I did, I didn't realize. He never said he did point it. The officer said a bunch of things to him, and as the district court noted in its order, it actually made a comment on that evidence. If you look at, I believe, page 26 of the order, where the court said it was garbled, it was basically a bunch of things that are being said by the officer, not questions, not interviews, just saying. And he's going, yes, sir, yes, sir, yes, sir, because all of a sudden, he recognized it's a police officer. And I think the right response is, yes, sir, to a police officer, no matter what's being said. When you realize, gee, it wasn't a burglar, it was a police officer in front of my yard. I think that makes sense to not, you know, we want people to be compliant with police officers when they're being arrested, but there's no dispute that he did have the gun out of his pocket, right? Yes. He testified he had it down by his side. And are you allowed, true question, you're, of course, allowed to defend your property and you can have a concealed carry anywhere, right? You can have open carry in Florida, even in 2020. But from what I heard of Judge Legarita's opinion, it can be a momentary open carry. You can't just run around with your gun, right? Now you can't. Now you can't. At the time, he had a concealed permit. That's in the record. Right, but the point is the gun wasn't concealed. Right. He said he had it out next to him, but he wasn't, it's disputed as to what he did with the firearm. He said he had it down by his side the whole entire time, which is not a crime. There's no crime to carry a firearm down by your side. But even in 2020 under Statute 790-053-1, you could still have, you could display your weapon for purposes of having it to protect your property in your home. That's correct, Judge Lagoa. So he could come out of his house with his gun under that statute in 2020, and that would be perfectly lawful. Correct. And now, just for the record, it's open carry.  I'm sorry, he did not chase anyone. I'm not saying he did. But could someone in Florida lawfully chase someone down the street with their gun out? Well, I think it's the way you're using the gun. I mean, if you have the gun out, it's one thing. You know, if you're pointing it at a person and you don't have justification, maybe not. I hypothetically can't tell you because there's so many different scenarios, but that's not what happened here. Most notably, the officer recognized immediately what the issue was, and one of your justices brought that up at the scene. He doubled down and arrested him. He did not have to. In fact, the evidence showed that they went and confirmed that the 911 call was actually made by his wife because they wanted to make sure he really made the 911 call. And instead of going to 911, it went to the regular dispatch. Yes. I guess a non-emergency. Right. It went to the wrong department. But they confirmed it, and the question is, why would they confirm it? Because they were investigating what his intent was at that moment. Did he really call the police to come there, or was he just vigilante justice? And they confirmed all that prior to making the arrest, correct? He confirmed all of that immediately, within minutes, seconds of being encountered. His entire explanation is said right there on the scene, where he's got his hands up and there's lights in his face, and he's one house over. It's not made up at the last minute, but the evidence shows that they wanted to go verify it happened. It did, despite the fact that they verified that the 911 call, and that he lived there, and that there were burglaries in the neighborhood. They still doubled down and arrested him. Right. That's why it's perplexing to me what the probable cause is, because if you have a reasonable duty to investigate, which officers do, and you make the investigation, and then you decide to charge someone, what is the probable cause? Because what is the crime that was committed? Well, the city's taken the position that probable cause developed the moment the officer saw something in his hand being waved. I don't believe that's correct. I believe you have to look at the totality of the circumstance. Well, again, aggravated assault, as I asked at the beginning, is a crime of intent. Yes, Your Honor. And that intent was dispelled within seconds. Although he was, I think it's fair to say, intending to scare whoever it was that he saw. He didn't realize that it was a police officer, obviously, but I don't think it's fair to say that he was out there for a friendly visit, right? He was there to defend his property and hope that the person would stay long enough for the police to arrive. This has happened. His testimony was this has happened many, many times in the same neighborhood, and that was his state of mind when he went out there. Well, then, but you just acknowledged that the video shows him off his property, so that motivation goes away or dissipates once he's off his property, and at least he knows that his home, his car, are no longer in danger. Right. I think what he's hoping is when you walk off your property, the person sees you and stays, and then the cops are supposed to be there within seconds. You were hoping that the cops would show up. That didn't. They never showed up. Well, they were there the whole time, but they didn't show up from that call. But we didn't get any further because he only got maybe 20, 30 feet off of his property before the cop turned around, Mr. Kennison turned around and put his headlights on, blue lights on, and told him to stop. Does arguable probable cause depend on whether he was trying to make the assailant in his mind stop and wait for police, or whether he was planning to harm the assailant? I'm not saying that I know the answer in his head right now, but I'm saying, can the officer be expected in that moment to try to sort out whether the person was trying to make someone stop or was trying to harm them? At that moment, the officer doesn't necessarily have to do that, but that's why you have the duty to investigate. And the duty to investigate immediately kicked in the moment Mr. Townsend talked to him and explained exactly what happened. Instead of investigating, they just decided to jump the gun and arrest him. But as the district court noted, arguable probable cause, there are disputed facts as to all of these things that occurred. If you recall, the officer also called for backup, not to dispatch, but to his own team and never mentioned that there was an individual pointing a firearm at him, which is really critical because that's something I think any reasonable officer would have relayed to their own backup, which was one street over, to turn this into a more serious situation as opposed to just a man walking down the street. Intoxication with a red herring, Your Honor. As Judge Lagoa mentioned, there was no evidence of intoxication whatsoever, and the officer when asked in his deposition admitted he did no investigation. And again, just so it's clear, he could have had drinks, okay, but it's three in the morning and he's coming out of his house, okay? He's not getting in his car and driving. He's coming out of his house and you're allowed to have drinks in your house. So that's just ridiculous. But at the end of the day, you have a right in Florida to defend your property and the police here, instead of tracking the burglars, which is what they were supposed to be doing, decided to arrest a citizen who was protecting his property. Your Honor, I agree with you. I believe that the Eleventh Circuit has precedent that says a summary judgment should be denied. When these types of facts are disputed, and I would ask this court, therefore, to affirm the district court's denial of summary judgment and qualified immunity, given that in the light most favorable to Mr. Townsend, there are material disputed facts on this arguable probable cause issue. So not off the hook quite yet. I have a question. So I think definitely, if he is, to my mind only, if the officer is standing there shining the flashlight in his car window and your client is standing on his front porch, right, with, not with a gun pointed, but with a gun kind of down at his side, I think there's definitely no problem there. I think you say also, I think also it would be if he was still anywhere on his property. I think that's likely. You say also that since he was shortly off of his property, he's still defending his  What if he really was chasing him? What if he was running and they were three houses down? What's the answer then? Well, the answer to that would be for the jury to then find that there was no probable cause because there's disputed facts as to those facts, meaning... No, no, no. I'm saying in my hypo, which is not what happened here. I'm not asking you to give this up for your client. In my hypo, everyone agrees that the property owner is chasing the person that they think was robbing their car. They're chasing them down the road. They're not pointing the gun at them, but they very clearly have a gun. At that point, is there an aggravated assault? No, I don't believe there would be. I mean, there has to be the intent. Chasing a person with a firearm is different than maybe pointing or firing the firearm or something of that nature. Right, like you have to have a willful and reckless disregard. So like if you shoot down the street and you take a shot, that would be a willful and reckless disregard and then that would be an aggravated assault. I think Florida's recognized that the ability to just have this firearm at your side is important. It is important to turn to others and it's a right. On that day, Mr. Townsend simply exercised his property rights and went out there and unfortunately the officer doubled down and decided that he was going to- And again, now we have open carry. The ban on open carry is unconstitutional in Florida. Yes, Your Honor. So I would ask the court to just review again the judge's very well-written summary judgment order because the judge did analyze all the evidence, which was very extensive, including the deposition testimonies of both sides and found that there were material disputed facts and it should go to a jury. So that's our position and thank you for your questions. I appreciate it. Thank you. Mr. Abbott, you have reserved five minutes. So Counselor, and maybe this can be on my time, and not speaking just for myself, let's say I'm with you with respect to the stop. He's got someone with a gun coming at him. I'm with you maybe even with respect to the handcuffs. You need to figure out as an officer what's happening here. But by then, and the video shows he's compliant, you know his wife has called the cops, you know he's a member of the neighborhood. Why the arrest and then the detention? I think he was in jail for what, two days? I don't know how long he was in jail, Judge. Well, you know he was in jail, right? I mean, he did not go home. He was arrested and he was taken to jail, no doubt about it. So why that? What, what, those steps? Because he committed a crime, Judge. And by that point, the crime was completed. Judge, we can't, let's give Mr. Townsend credit. He didn't know he was dealing with a police officer. We are not allowed to follow somebody off of our property and point a gun at them because we think they're trying to flashlight. You just said, and point a gun. But again, pointing a gun is in dispute because Mr. Townsend says he did not point a gun and your client says he did point a gun. So that can be, that is literally the definition of a credibility determination for a fact finder to make. Judge, I absolutely disagree with that. The test here isn't whether in fact Townsend pointed the gun. The test is whether or not Keniston could have reasonably believed that crime was afoot. That's all that he has to show. And to answer, to answer your question, Your Honor, we cannot, even if we're mistaken, we can't go down the street and point a gun at somebody who shined a light in our car, even if we think they were there for bad intent, even if we don't know they're a police officer, even if we thought they were thinking about breaking into the car. Of course, Townsend knew at this point that nobody broke into his car. The first thing he did was check the car, and he knows that nobody broke into his car. But at that time, he was already- Do you believe that Mr. Townsend, if your client was still next to the car, in the driveway, pointing a flashlight, and Mr. Townsend came out at that moment and pointed the gun at him and said, step away from my vehicle, would that be aggravated assault, yes or no? So, Judge, let me preface my answer by saying this. The issue of the state of Florida stand your ground law was not pled, was not- That's not my question. Yes or no. Would it be aggravated assault because he got arrested for aggravated assault? If he was on his property and the person was in the process of shining a light, I suspect not, Judge. You have read a portion of the stand our ground law as it existed at the time. We were able to protect our house. We were able to protect ourselves from imminent physical threat. I don't know that in our driveway, we are allowed to have shown a firearm to somebody that we suspect was there for a property crime. I am positive when I say the law would not allow you to do that when you were off of your property. If you were down the street, if you were just in public, we are not allowed to point our gun at somebody and say, I think that you were thinking about committing a property crime. And that's what the issue was here. I'm running out of time here. I still haven't really gotten into the argument I had planned to make before the court. So forgive me if I speak quickly. Judges, the one thing we can't do is change the facts of the case and what were found here. What was said on the scene, what was found by the lower court and what that tape shows when Keniston confronts Townsend, Keniston says, and then you pointed it at me. And Townsend said, yes, sir, I didn't realize. I thought somebody was trying to rob my car. So Townsend does not. Correct. But in the deposition, he specifically said, and he said it to another individual. There was another officer who was there. And he said, if that was what you thought, that was not what I did. That's what he said. Correct. And that's, again, a disputed issue. And that's why you can say whatever you want to say. But at the end of the day, there's a he said, she said, and that is a disputed issue of  No, Judge, I disagree with that. That is not how we evaluate qualified immunity to decide whether or not what the facts ultimately existed at the final moment. What we're here to determine is what a what a police officer could have reasonably seen. Before I sit down, Judge, let me give you an example. And it's the case that we filed for supplemental authority. The Scott versus City of Miami case that was decided a few months ago. That was a case where a police officer arrested somebody for being the driver of a car that had crashed and he committed a crime. In that case, the plaintiff denied that he was the driver of the car and the person that ran away. So you would think that's a dispute of fact, right? He got arrested for being the driver of the car. He denied on the scene and in the lawsuit that he was the driver of the car. The police officer's identification of that person as being the driver was made when the car passed him at 50 miles an hour. The plaintiff in that case was encountered two miles from the crash scene, eight minutes after the crash, even though he escaped on foot. The officer described the driver as wearing shorts and a white tank top when the plaintiff was found eight minutes later, in fact, wearing a dark shirt and jeans. The police officer did not describe the driver as having a beard while he had a beard. And here's what the court said in affirming qualified immunity for that police officer. It says there was probable cause even if the police officer was mistaken in his eyewitness identification. Because eyewitness identification is sufficient to establish probable cause. And it goes on, and the case for probable cause is even stronger when the identification is made by the arresting police officer. Now if in that case you get qualified immunity, where there is substantial evidence that the police officer made an identification mistake, where the person that was arrested makes it perfectly clear throughout is saying, it wasn't me, it wasn't me. If that's not an issue of fact that would undercut qualified immunity, then this case is even close to it. He was also charged with making a false report, police report of a theft of a car, right? Because in the Scott case, he was also charged with making a false report of a theft. Of the car, right? Of the car, yes. He denied he was the driver. He said his car was stolen and somebody else was driving it. Here you have a situation that's very different. The individual comes out, it's his house, you confirm that in fact his wife called 911. This is not, what is the crime other than the aggravated assault charge? It is aggravated assault from the police officer's perspective because he thought he saw a gun pointed at him and that's all that would be required for an aggravated assault and for a simple assault, much less, Judge. I think we've got your argument, thank you very much. Thank you, Your Honor. Our next case will be